CIVIL COMPLAINT FORM TO BE USED BY A *PRO SE* PRISONER

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Glenn H Stephens III
_____
**Full Name of Plaintiff**      **Inmate Number**

0531774

v.

Ogden Newspapers Inc.
_____
**Name of Defendant 1**

Williamsport Sun Gazette
_____
**Name of Defendant 2**

_____
**Name of Defendant 3**

_____
**Name of Defendant 4**

_____
**Name of Defendant 5**
(Print the names of all defendants.  If the names of all
defendants do not fit in this space, you may attach
additional pages. Do not include addresses in this
section).

Civil No. 4:25-CV-1824
(to be filled in by the Clerk's Office)

(✓) Demand for Jury Trial
(___) No Jury Trial Demand

**FILED
SCRANTON**

SEP 3 0 2025

PER _____
**DEPUTY CLERK**

## I.    NATURE OF COMPLAINT

Indicate below the federal legal basis for your claim, if known.

___    Civil Rights Action under 42 U.S.C. § 1983 (state, county, or municipal defendants)

___    Civil Rights Action under <u>Bivens v. Six Unknown Federal Narcotics Agents,</u> 403 U.S. 388
(1971) (federal defendants)

___    Negligence Action under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346, against the
United States

✓    Defamation, False Light under diversity
jurisdiction

II.    **ADDRESSES AND INFORMATION**

A.    **PLAINTIFF**

_Stephens Glenn H III Ph.D. J.D._

Name (Last, First, MI)

_OS 31774_

Inmate Number

_Williamsport PA Lycoming County Prison (temporary)_

Place of Confinement

_277 W Third Street Williamsport PA 17701_

Address

_For purposes of diversity jurisdiction, I am_

City, County, State, Zip Code _domiciled in Virginia (Falls Church) and Colorado_
_(Longmont with Niwot_
_postal box)_

Indicate whether you are a prisoner or other confined person as follows:

✓    Pretrial detainee

___    Civilly committed detainee

___    Immigration detainee

___    Convicted and sentenced state prisoner

___    Convicted and sentenced federal prisoner


B.    **DEFENDANT(S)**

Provide the information below for each defendant. Attach additional pages if needed.

Make sure that the defendant(s) listed below are identical to those contained in the caption.   If
incorrect information is provided, it could result in the delay or prevention of service of the
complaint.

Defendant 1:

_Ogden Newspapers Inc   1500 Main Street Wheeling_
_WV_
_26003_

Name (Last, First)

_Registered Agent — Mara Lynn Kutrovac_

Current Job Title

_2007 Marjorie Lane Moon Township Pa_

Current Work Address

_____

City, County, State, Zip Code

Ogden DBA —

Defendant 2:

Williamsport Sun Gazette

Name (Last, First)

252 W Fourth Street

Current Job Title

Williamsport PA 17701

Current Work Address

c/o Editor

City, County, State, Zip Code


Defendant 3:

Name (Last, First)

Current Job Title

Current Work Address

City, County, State, Zip Code


Defendant 4:

Name (Last, First)

Current Job Title

Current Work Address

City, County, State, Zip Code


Defendant 5:

Name (Last, First)

Current Job Title

Current Work Address

City, County, State, Zip Code

III.    **STATEMENT OF FACTS**

State only the facts of your claim below. Include all the facts you consider important. Attach additional pages if needed.

A.    Describe where and when the events giving rise to your claim(s) arose.

See aTTuched

B.    On what date did the events giving rise to your claim(s) occur?

In the last week of Avgust 2024 but discovered on or after September 25, 2024

C.    What are the facts underlying your claim(s)? (For example: What happened to you? Who did what?)

See aTTached

## IV.    LEGAL CLAIM(S)

You are not required to make legal argument or cite any cases or statutes.  However, state what constitutional rights, statutes, or laws you believe were violated by the above actions.  If you intend to assert multiple claims, number and set forth each claim in separate paragraphs. Attach additional pages if needed.

See attached

Defamation

False Light

Pendent State Law

Diversity Jurisdiction

## V.    INJURY

Describe with specificity what injury, harm, or damages you suffered because of the events described above.

See attached

## VI.    RELIEF

State exactly what you want the court to do for you.  For example, you may be seeking money damages, you may want the court to order a defendant to do something or stop doing something, or you may be seeking both types of relief.  If you are seeking monetary relief, state your request generally.  Do not request a specific amount of money.

$ 320 million dollars* in punitive damages (all assigned to other entities) and nominal compensatory damages. Retraction.

* i.e., one year of profits for Ogden.

**VII.    SIGNATURE**

By signing this complaint, you represent to the court that the facts alleged are true to the best of your knowledge and are supported by evidence, that those facts show a violation of law, and that you are not filing this complaint to harass another person or for any other improper purpose.

Local Rule of Court 83.18 requires *pro se* plaintiffs to keep the court informed of their current address. If your address changes while your lawsuit is being litigated, you must immediately inform the court of the change in writing. By signing and submitting the complaint form, you agree to provide the Clerk's Office with any changes to your address where case-related papers may be served, and you acknowledge that your failure to keep a current address on file with the Clerk's Office may result in dismissal of your case.

_____

Signature of Plaintiff

9 - 25 - 2025

Date

Glenn Stephens v. Ogden Newspapers DBA SunGazette
Complaint

## I. Executive Summary

Alternative Dispute Resolution (ADR) professional Glenn Stephens III, Ph.D. (U.C.L.A.), J.D. (UC Berkeley Law), an arbitrator (15 cases), mediator (106 cases), and therapeutic visitation facilitator (Boulder, Larimer, Jefferson and Weld counties (Colorado) with a settlement rate of 96%, sues Ogden Newspapers DBA The Williamsport Sun Gazette for defamation and false light tort breaches related to false and maliciously reckless publication, in the last week of August 2024 discovered by Stephens in the last week of September 2024 or in October 2024 which created the false impression that Stephens was a retrobate who created black mold in a rental space by removing a dehumidifier from time to time. Despite being informed of Stephens' extraordinary history of accomplishments, from academia (UCLA, Princeton, Pomona College, Penn State Professor), athletics (two time ITU world championship Triathlon qualifier), coaching (4,915.0 coaching ranking, Jersey shore middle school Track Coach) to government (senior counsel to Labor Board member Wilma Liebman, PA to SALT Negotiator Joseph Krizel (later undersecretary of defense, Public Affairs) to S Office of Civil Rights Assistant Secretary USDA) and the absurdity of the false black mold publication, Ogden's Registered agent Mera Kutovac and the Sun Gazette refused to settle and recant without any monetary damages. To punish and deter the Sun Gazette/Ogden, Stephens sues for one year of profits, $320,000,000, all of which Stephens will assign to nonprofits and charities. Stephens, who is running as a write in Magisterial District Justice candidate against Aaron Biichle in Lycoming County DISTRICT 29-1-02, will not profit personally from any damages awarded. He brings this suit, after seeking settlement a dozen times, to restore his good name, correct fake news, redress the false light portrayal and defend Truth.

## II. Background

Once one, if not the wealthiest place in the nation, Williamsport's precipitous decline (average per capita income of $14,000) has been matched by the replacement of local papers by a fake news publishing massive Chain Ogden Newspaper of West Virginia.

This decline has a personal twist for Stephens, whose father of the same name, was the best friend of Francis Buck O'Reilly the owner editor of the Express. Stephens' mother the former Margo Cohick is related to the Cohicks of Salladaysburg creamery fame and the 7-decade old Roan auctioneering enterprise. His mother was a model for Piper, and Stephens childhood nickname Pug was drawn from the brother of his father's other friend Pug Piper, Bill Piper's son. Stephens was raised by his uncle Weldon Cohick, of PA Grand Canyon biking fame and his mother after his parents divorced. His uncle, Maynard, a Fullerton CA policeman died climbing Annapurna. His nephew is a policeman. But the Sun Gazette ignored facts, and painted law abiding Stephens, a product

of a family without so much as a single DUI as a degenerate grifter. This case then is about more than money or even law but aimed to restore the good name and reputation of the Cohrick / Roan clan and Stephans which the Sun Gazette and Odgen besmirched cavalierly without offering Stephans the opportunity to tell his side, the truthfulness grounded side, of the story. Indeed even when Kutrovac and Ogden were given evidence of the lies of Brian and Kelly Rogan the paper arrogantly refused to recant its false defamatory claim. Such reckless disregard for truth has no place in civil society and must be punished and deterred with punitive damages.

## III. Venue and Jurisdiction

Domiciled in Virginia and Colorado, Stephens sues Ogden/Sun Gazette under diversity jurisdiction. See Charles v. Ogden Newspapers, et al 2024, WL 81874, *2 (EDVA, 2024)(diversity jurisdiction depends on the citizenship of the parties at the time the action commences).

## IV. Choice of Law, Pendent State Law

"[Under Pennsylvania's] common law regime the defendant [Ogden Newspapers] [is] strictly liable for the publication of a defamatory statement unless [Ogden] could prove the statement was true." Coleman v. Ogden Newspapers, Inc. DBA The Lock Haven Express, 142 A 3d 878 (Pa. Sup. (Ct. 2016)(discussing elements of defamation).

"[A]ctual malice may be shown by [a] failure to make a proper investigation. Herbert v. Lando, 441 US 153, 164, f.n. 12 (1979). A refusal of a newspaper to retract an exposed error tends to support a finding of actual malice. Zerangue v. TSP Newspapers, Inc, 814 F 2d 1066, 1071 (5th Cir. 1987). "[R]efusals to retract ... demonstrate a previous (malicious) state of mind." Weaver v. Lancaster Newspapers, 2025 Pa Sup. 1165 (Pa.) Sup. 2005)(on refusal to retract and actual malice).

To justify punitive damages, the plaintiff is called upon to satisfy [the] actual malice test. Gertz v. Robert Welch, Inc., 418 US 323 (1974) cited in Hepps v. Philadelphia Newspapers, 506 Pa. 304 (Pa. December 14, 1984); Feurstein v. Simpson, 2013 US District Lexis

4

Punitive Damages to be effective musts deter. This is basic hornbook law: punitive or exemplary damages may be awarded when tortfeasors act "with reckless indifference," see <u>Woodward v. Vivopharma</u>, 2013 Pa Sup. Unpub. 2668 (Pa Superior Ct 2013) or "as justice requires," see <u>Matarazo v. miller mutual Group Inc</u>, 924 A 2d 684 (Pa Common 2007). Here Ogden/Sm Gazette were recklessly indifferent to the truth, showed actual malice by repeatedly refusing to retract, and thus justice requires punitives.

Ogden is a massive chain, more akin to a network. The chain makes $320 million per year, or roughly $870,000 per day. This means that the level of punitive damages awarded on appellate review in this circuit in <u>Feuerstein v. Simpson</u>, 582 Fed. Appx 93 (3d. Civ. V.I, September 3, 2014) of $800,000 will have little deterrent effect and be a negligible slap on the hand to Ogden, constituting the equivalent of a day's pay for a working person. If the Sm Gazette had interviewed Stephens in fall 2024 and printed a retraction, the meritless criminal charges he faced would have been dropped. But only one side of the story - the Ragan lies were told. The Bible warned "One witness is not enough to convict of a crime... If any of you try to harm another by false allegations... If you made a false accusation you... receive the punishment of the accused... an eye for an eye." Deuteronomy 19.15-19. Stephens lost a year of income; Ogden should lose a year's profits

<u>IV. Applicable Law continued</u>

In Pennsylvania, a false light tort breach a) places the victim in a light that is highly offensive to a reasonable person, and b) results from knowledge or reckless disregard of falsity. <u>Krajewski v. Gusoff</u>, 2012 Pa Superior Ct. 166 (Pa 2012). Unlike defamation which turns on falsity, a false light breach of duty may involve true but selectively chosen information that creates a false impression. Id. See also <u>Santillo v. Reedel</u> 430 Pa Svp. 2.10 (Pa Sup. Ct. Nov. 30, 1943). As with punitive damages in defamation cases the false light plaintiff must prove actual malice, <u>Krajewski</u>, id. Under the fourth Pennsylvania Jury Instruction in False Light cases, "One who gives publicity to a matter concerning another person before publishing false light to that personal harm suffered as a result of [the] publicity... [If] the person giving the publicity acted with knowledge of falsity or reckless disregard." Pa. SSJI Civ. 17.220.

Nominal compensatory damages - a trivial sum - may be awarded where a plaintiff has not proven false light compensatory damages. 21 PLE Damages, 13. See <u>Wecht v. PG Publ'g Co.</u>, 725 A 2d 788 (Pa Svp. G. 1997) (holding generally false light compensatory damages required medical testimony). But if nominal compensatory damages are awarded, the ratio of those nominal compensatory damages to punitive damages need not 'place undue weight on mathematical ratios." See <u>Saunders v. Branch Banking of Va</u>, 526 F 3d 142 (4th Cir) In egregious case the ratio of punitives to compensatory may be large. <u>Jester v. Hutt</u>, 937 F3d 233 (3d Cir. 2012)

criminal charges has subsequently manifested as abuse of process.

In <u>Orange Stones Co v. City of Reading</u>, 87 A.3d 1014, 1025, 2014 Pa Commw. LEXIS 182, (Pa. Commw. Ct. March 21, 2014), the Court observed:

> The common law tort of abuse of process involves the perversion of legal processes after it has begun to achieve a result for which the process was not intended. Abuse of process has been described by the Supreme Court as the use of the legal process as a tactical weapon to coerce a desired result, that is not the legitimate object of the process. In order to state a cause of action for abuse of process it must be alleged that the defendant used a legal process to accomplish a purpose for which the process was not designed. The classic example is the initiation of a civil proceeding to coerce the payment of a claim completely unrelated to the cause of action sued upon. It is not enough that the defendant had a bad or malicious intentions. or the defendant acted from spite or with an ulterior motive. Rather there must be an act or threat not authorized by the process or the process must be used for an illigitimate aim... or to coerce.... The plaintiff. <u>A. T. Hamilton Contracting Co. v. Cowder</u>, 434 Pa 491 (Pa. Super. Ct. June 20, 1994)

Although malice may be averred generally, plaintiff must plead sufficient factual circumstances that give rise to an inference as to the [defendants] state of mind. 2 <u>Goodrich Amran 2d sec 1014(b)</u>

The weaponization of State after retaliation impinges or coerces Stephens' free expression right to run for office, contrary to 42 USC Sec. 1985, violation of First Amendment right to be a candidate for public office contrary to 42 USC 1983, and violations of First amendment rights. And as a result, Younger, Pullman abstention and sovereign immunity do not apply; no qualified immunity if violated a statutory or constitutional right. See <u>Carroll v. Carman</u>, 135 S.Ct. 348 (2014).

## V. The Fiction of Sovereign Immunity Does Not Apply Here

That sovereign immunity is a judge-concocted myth is evident in the first sentence of the Constitution, which begins "We the People." The PEOPLE - alone - are Sovereign in the United States and <u>NO</u> official serving them is immune from civil or criminal liability for their failure to execute their positions properly. But ignoring junior high school civics and the plain wording of the Constitution, judges - federal and state - perpetuate the heinous myth they and other officials are Sovereigns, mini-Sun-Kings who transcend the law.

# IV. The Reagans Weaponization of ADA/FHA Retaliation and the Constitutionally Retaliatory Abuse of Process in violation of Sections 1983 and 1985 by Butts, et al.

After testing and finding black mold in the rental space the Reagans rented him, Stephens exercised his statutory rights by:

1. notifying the Reagans of the positive mold test
2. withholding rent per common law protected practice
3. asking under the ADA/FHA the interactive process and reasonable accommodation (mold remediation)
4. requesting Northern Virginia mediation service mediation
5. filing a HUD administrative claim to exhaust administrative remedies
6. whistleblowing under PA Whistleblower act the Reagan's many code and lease violations including routine exposure of renters to black mold and toxo plasmosis
7. whistleblower complaints to Codes Bureau, OSHA, Pa. + Ly Co. public Health

Ignoring the law the Reagans and property manager Jeff Johnson, openly expressed animus against Stephen constitutionally and statutorily protected activities and almost immediately began a spree of retaliatory conduct that included turning off internet access Stephens needed for work (despite his payments being current) and deliberately lying to police - first the state police in Montoursville and later South Williamsport police - in an attempt to leverage these gendarmeries into criminalizing - wrongly and unlawfully - Stephens' constitutionally and statutorily protected activities. Then after successfully using the state police to force Stephens into settlement talks in the middle of his sleep, the Reagans' and Johnson breached that very exit agreement by reneging on their promises of $500 cash upon move-out, and then when Stephens asked for restitution for the bounced $500 check, falsely telling similarly police that Stephens was attempting extortion -

## V. Facts

5

B. a. Iqbal Twombley Factual Averments - False Light

1. Stephen shall presently, via his sister, provide a resume.

2. His accomplishment have been published in area newspapers, whether the Express or Sun Gazette or the Grit for decades.

3. The Sun Gazette did <u>no</u> investigation of Stephens background before printing the "hit piece" in August 2024. *

4. Even when provided with Stephens biographical facts and resume, Odgen and the Sun Gazette refused to correct the false light.

5. No reasonable person would fail to be offended by the false light that the accomplished Dr. Stephens was cast in by the Sun Gazette and Ogden. * **

6. The false light in which Stephens was cast by Ogden/Sun Gazette has created extreme emotional distress, embarrasment, humiliation, and social and family friction for Stephens family and friends.

7. Such destructive fake news is

* Pennsylvania applies the discovery rule.

** This proposition is arguably argumentative and legalistic.

4

as courts routinely observe, particularly destructive and devastating to non-celebrity, non wealthy victims of defamation and false light, who unlike wealthy celebrities cannot deploy a fleet of agents, publicity companies, media opportunities, press conferences and interviews to correct fake news.

8. Even a billionaire President with a bully pulpit feels acutely the sting and embarrassment of fake news.

9. Stephens submits the Sun Gazette and Ogden feel free to publicize fake news and to defame because they enjoy monopoly status in Lock Haven (the Express) and Williamsport. *

10. The Sun Gazette admits monopoly status printing, "We are #1 in the market. 15.8 million page views annual[sic]. 1.4 million page views monthly. 2.9 million unique visitors anually ... Tens of thousands of Daily online readers! 16.8 million annual page views and growing." Sun Gazette, Tuesday September 16, 2025.

11. The Sun Gazette and Ogden refused to recant in violation of their page 2 correction policy.

* Argumentative admittedly.

7

12. As a result, "tens of thousands" of persons who do not know otherwise were misled recklessly to see Dr. Stephens in a very destructive, extremely harmful light.

13. This could have been corrected without litigation, at no cost to Ogden or the Sun Gazette.

14. But Ogden and the Sun Gazette refused to recant.

b. Twombly Iqbal Averments
## The Black Mold Lie

15. Mold, subsequently determined by Stephens' tests in July 2024, predated Stephens' summer 2024 rental of a space on the bottom floor of 50 East Houston Montgomery PA 17752.

16. When Stephens first entered the Church at that location via the West 2nd floor entrance, he saw black mold and animal or bird dropping in the stairwell.

17. The room adjacent to that stairwell that housed the heating system (no longer used) was covered with black mold.

✱ See (3d Cir 1998)("[A] vicarious admission ... [s] outside the realm of hearsay by definition.") &

18. The room across from Stephens rental later rented by Howard Christie of 43 & Houston to store building materials had black mold all over the floor.

19. Stephens took pictures of the black mold in those locations.

20. When Stephens first met the property manager at the site - Jeffrey Johnson - at his rental space by the front door, the following exchange ensued:

Stephens: [pointing to front door of space] "Is that black mold?"

Johnson: "Yes,✱ but vinegar will remove it."

21. Vinegar did not remove it.

22. Once Stephens met with Brian Ragan to clear the space, no dehumidifier was in the space.

23. So, even if, removal of a dehumidifier could cause proliferate black mold, Ragan and Johnsons failure - BEFORE Stephens move-in would have been to blame.

9

24. When Stephens moved in Regan and Johnson for Olivewood LLC, provided a refrigerator and dehumidifier.

25. The refrigerator had black mold inside and outside.

26. The dehumidifier had black mold inside and outside.

27. Stephens attempted black mold remediation with vinegar and bleach cleaner but was not entirely successful.

28. Stephens eventually began to experience black mold allergy symptoms, prompting him to test the space.

29. Since the dehumidifier had visible black mold, and the object was to test the space, not the dehumidifier, Stephens removed the dehumidifier while he tested.

16

30. To have done otherwise would simply have proven the obvious — that the dehumidifier had black mold inside it.

31. The test results, see exhibit, shocked Staphens.

37. Staphens then asked for reasonable accomodation for his black mold allergy and mold remediation, filed an administrative claim with HUD (later exhausting administrative remedies) consistent with the ADA and Fair Housing Act.

38. Johnson the property manager and Regan, Brian and Kelly retaliated almost immediately.

39. Sick from mold, Staphens agreed to move out, impliedly sparing the Regans the cost of mold remediation, for $500 in cash.

40. Staphens performed, more art timely, and the Regans, Johnson + Olivewood breached the agreement passing Staphens a bad check.

n

41. When Stephens repeatedly offered to settle matters for $500 in restitution for the bad check, the Regans retaliated with a lies-filled false police report that led to Stephens wrongful arrest without due process or probable cause.

42. The Regans false police report contained a number of overnight lies and ellided over crucial facts like Stephens ADA/FHA statutorily protected opposition to Regan/Johnson/Olivewood retaliation and his requests for restitution.

43. Although the Sun Gazette could and did publish the crime report, falsities included, the claim by Brian Regan that Stephens caused the black mold by removing the dehumidifier was irrelevant - collateral - to the crime report.

44. Other Regan lies in the crime report cast Stephens in a false light.

45. Neither the Southside Detective Daniel Boyd nor the Sun Gazette talked to Stephens.

12

46. The Rogans failed to tell the Detective that they owed more than $48,000 in back property taxes at the time — August September 2024 — and faced sheriff's sales at a half dozen properties according to the Lycoming County reporter.

47. The Rogan, the Detective and the Sun Gazette / Ogden never investigated the Rogans long checkered history of not paying bills, taxes and debts.

48. Instead, Rogan lies were taken at face value by the Detective and Sun Gazette Ogden.

49. Stephens could have proven the many Rogan lies false in mere minutes.

50. The black mold spore that grew in the test were airborne and likely came, in part from a water leak behind paneling.

51. The Rogans blighted property on memorial had similar leakage caused mold problems, as reported by the Sun Gazette.

51. But the Sun Gazette and Ogden mayor reread their own story on mold at the Rogan's memorial property

13

52. The Sun Gazette, Ogden, and the Detective also ignored and did not investigate into the Rogans' repeated failures to pay taxes — property taxes in 2021 — on time, contractors on time, or credit card or water bills.

53. The Sun Gazette, Ogden and a Detective ignored voluminous public evidence, including Sun Gazette articles on the blighted property that contradicted the wildly false misrepresentation of Stephens as a deadbeat not paying rent — as the Rogan lies put it "living for free."

54. Contrary to Rogan lies, Stephens was current on rent at 50 E Houston Montgomery until, consistent with PA common law, he withheld rent after notice to the Rogans of finding black mold.

55. Stephens, the middle school track coach at Jersey Shore in the Spring of 2024 was slated to be head cross country coach at Muncy/Montgomery at the time.

14.

50. Stephens, a certified lifeguard, was lifeguarding at Bucknell University at the time.

51. The Detective, the Sun Gazette and Ogden simply failed to establish whether Stephens was working and paying bills at the time of his arrest without probable cause.

52. The Sun Gazette and Ogden take all police reports at face value and — literally — never publish the accused rebuttals to such allegations, despite the constitutional presumption of innocence until proof of guilt.

53. The allegation that Stephens caused his own black mold allergy intentionally borders on defamation per se since Stephens is an ADA specialist.

54. Stephens learned of the Sun Gazette Ogden defamation in late September and early October 2024.

55. This "discovery" happened within the statute of limitations. *

* legal and conclusory

15

56.    The Registered agent of Ogden Newspaper the owner of the Sun Gazette refused to recant and retract in October 2024 and thereafter.

57.    The Sun Gazette, Ogden and the Regans force this litigation.

57.    Stephens would prefer to mediate and settle, then and now.

58.    Stephens main concerns are journalistic accuracy (or lack thereof) the truth, and restoring his reputation in the readership of the Sun Gazette.

VI

Damages

I See End note page

For the legal reasons cited, under case law punitives apply here. Stephens seeks $320 million in punitives and nominal compensatory damages to deter and punish Ogden and Sun Gazette. Stephens cites that figure which represents one year of Ogden profits. It is fitting given the Biblical rule of an eye for an eye, that the Ogden/Sun Gazette caused loss of a year of income for Stephens be "repaid" by Ogden/Sun Gazette losing a year of profits.

Stephens will assign all $320 million as-

16.

a. $80 million to the Corporation for Public Broadcasting

b. $80 million to form a nonprofit which will provide Lycoming County residents with black mold and Toxoplasmosis test kits and then provide retainers and hourly fees to lawyer from outside the County in tort and implied warranty of habitability actions against slum lords like the Regans

c. $80 million to form a Political action committee to vet and fund candidates to replace Presiding Judge Butts, Common Pleas Judges Carlucci, Gardner, Linhardt, Tira, and MDSs Birchle, Frey, Whiteman and Dieter when they next face election

d. $20 million to build a track for South Williamsport High School and $20 million to replace the track at the old Jersey Shore Field

e. $40 million for WVIA, the NPR station in Williamsport.

47

56. The Registered Agent of Ogden Newspapers the owner of the Sun Gazette refused Stephens settlement overtures that included retraction.

57. The Williamsport Sun Gazette claims, under a "correction" policy published each day in the bottom of page two "The Williamsport Sun Gazette strives for accurate reporting. If an error is made, call 570-326-1551 ex 3115."

58. The refusal to retract, repeatedly, violates the paper's own correction policy.

59. The Sun Gazette and Ogden force litigation - Stephens always prefers settlement.

60. Stephens asks this Court to refer this case to mediation immediately to save court resources and tax payer monies.

## VI. Damages

In addition to a retraction, Stephens' relief includes nominal compensatory damages and in his view punitive damages of a years' profits under the principle of an eye for an eye, i.e., one years' profits to remedy the loss of a year of income. Otherwise, if the Ogden Chain and Sun Gazette are hit with just a day's' pay "equivalent" there will be no deterrence for their reckless publication of defamatory fake news and fake light breach.

18

Regardless of the exact amount of punitive damages won, Stephens shall assign punitives in equal proportions to the following, but if $300 or so million is awarded.

a. 1/8 to the williamsport public radio, NPR station WVIA, which broadcasts news that is not fake but accurate. If $320 million, this amount assigned will be $40 million.

b. 1/8 to form a nonprofit to provide Lycoming County residents with black mold and Toxoplasmosis test kits and to pay retainers for indigent renters for implied warranty of habitability suits against slumlords like the Regans

c. 1/8 to fund a PAC to vet and fund candidates to replace the Mayor, Head Common Pleas Judge Butts, Common Pleas Judges Carlucci, Gardner, Tira and Linhardt and MDJs Biichle, Frey and Dieter

d. 1/8 to build a track in South Williamsport and 1/8 to build a new track around the Jersey Shore football field.

e. 1/8 to remediate mold and restore 50 E. Houston Montgomery, via a Howard Christie-run Trust to create a Repasz band museum and practice center.

f. 1/8 to restore the Regans blighted memorial street project, again

12

run by a trust with Howard Christie as trustee, that will create an indoor pool and Olympic sized outdoor pool to compete with the YMCA nearby.

g. 1/8 for the investigation by private investigators and forensic accountants of the Prison for profit scam of Nancy Butts, Tom Manno, Lindsey Sweeley, William Carlucci, Ryan Tira, and Ryan Gardner and Thomas Linhardt, and to fund Lobbyists to inveigh the State Attorney General and the Pennsylvania Assembly and Judicial Ethics Board to investigate the criminal and unethical conduct of those wayward officials.

If the court awards lower damages, Stephens' assignments shall be adjusted accordingly, with the highest priority assignments — a, b, c, g — given priority. Lycoming County needs a competitor to Ogden Sun Gazette fake news and WVIA provides that. Lycoming County needs judicial house cleaning and accountability for the judges above who abuse their positions, breach ethics and profit by endless delays, constant continuances and overpled allegations to line their pockets.

20

✻✻✻✽

<u>Endnote on damages.</u> Plaintiff realizes that $370 million in damages falls outside standard decisional law defamation damages against newspapers. See <u>Feuerstein v. Simpson,</u> 582 Fed. Appx. 93, affirming, <u>Feuerstein v. Simpson,</u> 2013 US District Lexis 140182 (D.V.I. Dec. 2013)(discussing cases involving emotional damages, long lasting negative impact on reputation or financial situation ranging from $150,000 to 1.5 million to 21 million and reducing the initial punitive award to $500,000). But Ogden is more a network than a single newspaper and even the Sun Gazette boasts its "market reach" includes not only $30,000 print readers daily but 1.4 million page views monthly, 2.8 million unique visitors annually, and 15 million page views annually. Thus to punish and deter the far reaching Ogden/ Sun Gazette monolith, network-type punitive damages are more relevant than single paper damages).

Like the then former President, Stephens was defamed by a veritable network. In 2023, in <u>Trump v. CNN, Inc.,</u> 684 F. Supp. 3d 1269 (S.D. Fla. 2023), Trump sued CNN for $475 million dollars in punitive damages for, inter alia, defamatory published television "reporting" that incited readers and viewers to "hate, contempt, distrust, ridicule" and embarrasment. Unlike the billionaire then-former POTUS, Stephens did not have a political party, sympathetic media outlets (Fox, Newsmax, etc.) and public relations people to assauge the hate contempt distrust and ridicule to which he was subjected by the Ogden/Sun Gazette conglomerate. Therefore, Stephens submits $370 million in punitives is not excessive.

22

1

"Where evidence which would properly be part of a case is within the control of a party whose interest it would naturally be to produce it, and without satisfactory explanation [the party] fails to do so, [one] may draw an inference that would be unfavorable.." Wisler v. Manor Care of Lancaster Pa LLC. 124 A3d 317 (2015)(J. Mannion) See also Interstate Circuit v. US, 306 US 208 (1931) citing Wigmore on Evidence in Trials at Common Law, Sec. 291, pp. 227, 229 (1979). ("This rule can be traced back to 1722 and has been utilized in scores of modern cases.")

The counsel for Ogden and the sungazetta is no novice (she is the counsel of the Pittsburgh Penguins along with Ogden). When confronted with the truth her silence was a tacit admission that there was no defense for this indefensible submission. And her failure to provide the types of rationales CNN's counsels used successfully in Trump v CNN, warrants the adverse inference Unfavorable To Ogden/ Sun Gazette. And absent that, with the inference summary judgement is warranted here.

21

End note continued.

While Trump v. Cnn provides a ball park bench mark for punitive damages against a media conglomerate, this case is distinguishable on the facts because Stephens lacks the resource Trump had to counter the allegations he deemed defamatory, and CNN convinced the district judge that CNN's reporting involved opinion statements on issues of public concern. Id, 1275.

The Sun Gazette and Ogden cannot claim they published the false statement that Stephens caused the black mold by removing a dehumidifiers as their political opinion. Indeed when confronted with the truth and asked to recant/retract, Ogden by Registered agent Kutrovac provided no such political opinion justification. The absence of any public figure – public controversy opinion defense warrants an adverse inference none applies. Again Trump is distinguishable, CNN vigorously and successfully defended on opinion ground. The Sun Gazette and Kutrovac/Ogden did not.

Although Stephens wrongful criminal charges are arguably a matter of public record, the black mold calumny hurled at Stephens by the lying Regans is utterly irrelevant to the criminal charge. Thus the papers crime covering function does not apply to a lie woven into a false criminal report by a check bouncing recidivist Brian Regan (earned a PFA for threatening his wife)

h. Stephens will pocket $1 in nominal damages.

Glenn Stephens
277 W Third Street
(temporary)
Williansport PA
17701
Drghs30 gmail.com
410 - 927 - 0725

Dear Clerk:

I have previously submitted an IFP form and my circumstances are unchanged.

If, however, I must submit an IFP for each separate suit pleas send me several IFP forms.

Apologies for my handwritten submissions

Outside prison, on the street, I provide typed well formatted professional pleadings, memos, briefs and motions.

But here, I lack a computer to write and print submissions.

Regards

Dr.

Glenn Stephens

P.S- I want a Williansport venue for those jury trials,






Glenn Stephens
Inmate# OS3IT74
Lycoming County Prison
Williamsport Pa
17701

RECEIVED
SCRANTON

SEP 30 2025

PER _____
DEPUTY CLERK

USMS X-RAY

Office of the Clerk
US District Court
Middle District PA
238 North Washington Ave
P.O. Box 1148
Scranton Pa 18501-1148